HARTFORD FIRE INS. Co. v. WILLIAMS et al.

(Division B. Jan. 2, 1933.)

[145 So. 94. No. 30304.]

234

Welch & Cooper, of Laurel, and Watkins, Watkins & Eager, of Jackson, for appellant.

Collins & Collins, of Laurel, for appellees.

238

Argued orally by **W. H. Watkins, Jr.,** for appellant, and **Floyd O. Collins,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

R. F. Williams, appellee, took out a farm policy with the Hartford Fire Insurance Company for eight hundred dollars on his dwelling; two hundred dollars on household and kitchen furniture; four hundred dollars on barn and sheds; one hundred fifty dollars on grain and seeds of all kinds; fifty dollars on hay, straw, and fodder; and two hundred dollars on farm machinery and implements.

The agent of the Hartford Fire Insurance Company took an application for insurance from Williams, and wrote down Williams' answers to questions in the application. The agent then mailed the application to the Atlanta office of said company, and the policy was issued and sent to the agent at Laurel, Mississippi, who delivered it to Williams.

The property insured was destroyed by fire and this suit was brought to recover the amount of the insurance. The defendant, Hartford Fire Insurance Company, filed the plea of general issue, and certain special pleas, alleging in one that Williams should not have or recover anything on the policy for breaches of certain warranties contained in the application and in the policy. Among other things, the policy contains the following provision: "In consideration of the stipulations herein named and of forty dollars and eighty-five cents . . . and the warranties made in the assured's application for indemnity in said company does insure, etc." That said policy further provides as follows, to-wit: "This insurance is based upon the statements contained in the assured's application and diagram of even number herewith in the company's Southern Farm Department office of Atlanta, Georgia, each and every statement of which is hereby specifically made a warranty and a part hereof, and it is agreed that this entire policy shall be void if the assured has concealed or misrepresented in writ-

ing or otherwise any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the assured in the property be not truly stated herein, or in case of any fraud or false swearing by the assured touching any matter relating to this insurance or subject thereof, whether before or after a loss.''

The application for the insurance, among other things, contains the following: ''The foregoing is my own agreement and statement, and is a correct description of the property on which indemnity is asked, and I hereby agree that insurance shall be predicated on such statement, agreement and description, if this application is approved, and that the foregoing shall be deemed and taken to be promissory warranties running during the entire life of said policy.'' The following question was asked, ''No. 11. Have you suffered loss by fire? If so, complete answers to questions on reverse side of application.'' Answer, ''Yes.'' On the reverse side of said application appeared the complete answers to the above question: ''Time of fire 11 A. M. Year 1927-28. Month October. Cause of fire, caught from stove flue. Kind of property destroyed or damaged—Dwg & Furniture. Where was property located. Here. Amount of loss or damage sustained. Three thousand dollars. Amount of insurance, if any, on property, one thousand, five hundred dollars. Name of Company, The Citizens' Ins. Co. Was loss paid and if so, how much. Yes, one thousand, five hundred dollars. Was settlement satisfactory, Yes.''

It appeared from the evidence that Williams had arranged with a bank in Laurel for a loan to be secured by a deed of trust on the property here involved, the note to be indorsed by Williams' brother, and, if this loan was effected, that the deed of trust held by the Citizens' State Bank at Heidelberg, Mississippi, for four hundred eleven dollars, would be paid off. But, for some reason, Williams' brother finally declined to sign the

note, and the bank loaned Williams only three hundred sixty-five dollars, from which loan the land was redeemed from the tax sale of the property. It also appeared in the evidence that there was a judgment on the judgment roll against Williams, but this judgment was reversed by the Supreme Court, and the costs taxed against the plaintiff in the judgment. So, in fact, the judgment was no debt or lien against the property involved.

The policy was payable, in case of loss, to the bank at Laurel, Mississippi, as its interest might appear.

The case was submitted to the jury, and, on the first trial, the jury returned a verdict for one thousand, thirty-one dollars and eight cents reciting that three hundred thirty-four dollars and nineteen cents should be deducted from the amount for the Commercial National Bank of Laurel, Mississippi. The evidence showed that the contents of the barn, seed, grain, and farm implements were valued at four hundred eighty-five dollars, according to the estimate of the plaintiff's witnesses. The verdict and judgment on the first trial was set aside on motion as to all except the amount due the bank.

The jury's verdict in the second trial was only as to the amount of damages, and reads as follows: "We, the jury, find for the plaintiff in the sum of one thousand, four hundred dollars insured value of house, barn, household and kitchen furniture as provided in policy, plus four hundred dollars, being a reasonable market value of farm products and tools, less one hundred sixty-three dollars and forty cents unpaid premium." Judgment was entered for this amount by the court.

The court instructed the jury on the last trial in reference to the contents of the barn and the value of tools, implements, etc., as follows: "The court instructs the jury for the plaintiff that, in computing any sum you may find as being the reasonable market value of any farm products and farm tools destroyed in said fire, you must find the amount due under said policy by get-

ting three-fourths of said market values so found, if any, not to exceed one hundred fifty dollars for grain, fifty dollars for hay and fodder, and two hundred dollars for farm tools, nor over four hundred dollars for all.''

The appellant complains that the court erred in setting aside the verdict in the first trial on the application of Williams, the plaintiff there.

The insurance on the house, furniture, and barn came under the provisions of our valued policy law, and, as there was a total loss, the amount of the insurance as fixed by the policy on them became due and payable on the establishment of the loss, and the verdict of the jury was not in accordance with the proof in the case. In other words, it was contrary to the evidence, and the court committed no error in this regard.

It is argued also that the court erred in setting aside the verdict in the first trial because the proof showed that there was a breach of the warranties in the application for the insurance, and also that the defendant should have had a peremptory instruction in the first trial, as well as in the last trial, because of such breach of warranties.

There was a radical conflict in the evidence between the assured and the insurance agent who filled out the application, as to what was disclosed to the agent at that time.

It is also argued that the agent who took the application was not the agent of the company for the purpose of procuring applications and issuing policies, and the company had a right to rely upon the statements alone contained in the application for insurance, and the application recited that it contained all the pertinent facts and was signed by the assured.

An agent, under our statute, is the agent of the company for the purpose for which he is employed, and as to what he is authorized to do, and his knowledge, ac-

quired while so acting, is the knowledge of the company as to all such matters.

The agent testified that he was agent of the company for the purpose of soliciting insurance and sending in applications to the company, and he admitted that he filled out the answers contained in the application, and also that he delivered the policy, and that it was a part of his business, as agent of the company, to deliver policies of insurance issued by the Atlanta office.

The testimony in the record brings this case squarely within the holding of this court in the case of Hartford Fire Insurance Company v. Clark, 154 Miss. 418, 122 So. 551, 559, and the more recent case of Home Insurance Company v. G. M. Thornhill, 144 So. 861, decided December 12, 1932.

It was the function of the jury to decide the truth of statements made in the evidence pertinent to the issue, and we are bound by their finding as to conflicts in the evidence.

We are of the opinion, however, that the court should not have entered judgment for that part of the last verdict of the jury for four hundred dollars for the grain, hay, farm tools, etc., but should have entered a judgment for three hundred dollars. That part of the property destroyed was subject to a valuation of three-fourths of the value, four hundred dollars, and we think the language of the verdict is too plain to admit of any legal doubt as to its meaning.

The value of this property, as estimated by the witnesses, was four hundred eighty-five dollars. Three-fourths of that value was destroyed. The judgment could have been corrected on the face of the record, and can be so corrected here, and will be to the extent of reducing the judgment from four hundred dollars to three hundred dollars.

On account of this error, the court will apportion the costs of the appeal so as to tax the appellee with one-tenth thereof.

Affirmed with remittitur.