451 So.2d 208 (1984)
Jerry Lynn YOUNG
v.
STATE of Mississippi.
No. 54665.
Supreme Court of Mississippi.
May 9, 1984.
Mauldin, Sneed & Mauldin, William M. Mauldin, Pontotoc, for appellant.
Bill Allain, Atty. Gen. by Anita Mathews Stamps, Sp. Asst. Atty. Gen., Jackson, for appellee.
*209 Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court.
On petition for rehearing the former opinion is withdrawn and this opinion is substituted.
Jerry Lynn Young was found guilty of one count of attempted armed robbery and two counts of aggravated assault and sentenced to a total of fifty (50) years in the Mississippi Department of Corrections. From this conviction in the Circuit Court of Pontotoc County, Young appeals, assigning numerous errors. We reverse on the failure to instruct the jury on the law of the defendant's alibi defense as requested, as a denial of the defendant's right of due process of law under the Mississippi Constitution.

I.
Since this case is being reversed for retrial, we only address two assignments of error:
(1) That it was reversible error for the trial court to refuse an instruction advising the jury as to the standard to apply in weighing the alibi evidence, and
(2) That it was reversible error to permit the state to use self-serving hearsay to bolster the victim's testimony.
Likewise, we elect not to comment in detail on the facts of the first trial. It is sufficient to state that Jerry Lynn Young was indicted of the attempted robbery of the home of Wendell Luther in Pontotoc on February 22, 1980.[1] Additionally, Young was indicted for the alleged aggravated assault of Luther and Luther's sixteen year old daughter, Patsy, growing out of the same occurrence. Young's total defense was alibi, and he offered himself and other witnesses in support of his assertion that he was not present at the Luther home at the time of the crime, but was at another location.

II.
At the trial's conclusion, the defendant submitted seventeen written instructions for the judge's approval. The trial judge directed the defense counsel to select six from the total number in accord with Mississippi Uniform Criminal Rules of Circuit Court Practice, No. 5.03. Time was permitted for this consideration, and defense counsel selected the following instructions covering the stated subject matter:
(1) D-1  Weight to be given to state's witness receiving alleged immunity (Refused by the Court).
(2) D-2  Weight to be given testimony of an alleged accomplice (Granted by the court).
(3) D-8  Definition of reasonable doubt, moral certainty, and presumption of innocence (Refused by the court as duplicate to court's instruction).
(4) D-10  State's burden to prove guilt beyond reasonable doubt (Refused by the court as duplicate to court's instruction).
(5) D-13  Impeachment of witness by prior inconsistent statement to be considered as to weight and believability and not as to guilt or innocence (Granted by the court).
(6) D-16  Competency of defendant to testify and weight to be given to his testimony (Refused by the court for reason that this was not a circumstantial evidence case).
A seventh instruction, a peremptory instruction to the jury to find the defendant not guilty, was already ruled upon and denied. No appeal is taken regarding the refusal of any of the four above instructions. After the trial court's action on the first six submitted instructions, the following colloquy occurred:
BY MR. FARESE: All right, Your Honor, in view of the fact that, I think, maybe we have been given two instructions, I would like (to) request that we be granted instruction # D-17.

*210 BY MR. BOWEN: The State objects to an additional instruction, Your Honor.
BY JUDGE BIGGERS: All right, D-17 will be refused in that six have already been tendered and also  for that reason.
The refused instruction D-17 is as follows and contains the alibi defense.
The Court instructs the jury that before the defendant can be found guilty, the State must present competent evidence that proves beyond a reasonable doubt that the defendant was actually present at the time the crime was committed and that if, after considering all the evidence presented by the State, you have any reason to believe that the evidence presented by the defendant to the effect that he did not commit the crime charged is true or that it is probably true, you must find the defendant "not guilty."
The trial judge's refusal of the instruction was based on the fact that defense had already tendered six previous instructions. The record is unclear as to the meaning of the judge's remaining statement "and also  for that reason".

III.
The six instruction limit is set forth in Rule 5.03, of Mississippi Uniform Criminal Rules of Circuit Court Practice[2], which in pertinent part provides:
... Except for good cause shown, the court will not entertain a request for additional instruction or instructions which have not been prefiled in accordance with the above.
The attorneys may submit no more than six instructions on the substantive law of the case to which the opposing party shall dictate into the record the specific objections... .
This appeal is taken asserting that the defendant was entitled to have the jury instructed on his alibi defense. Clearly in cases where a defendant interposes the defense of alibi, and presents testimony in support of such a defense, the defense is entitled to a jury instruction focusing upon such a theory. Sanford v. State, 372 So.2d 276 (Miss. 1979).
"Alibi" as a defense is well established in our criminal jurisprudence. We have held many times that alibi testimony, if believed by the jury when considered along with all the other evidence, requires acquittal. Without question, one who interposes an alibi as the theory of his defense, and presents testimony in support of such a plea, is entitled to a jury instruction focusing upon such a theory.
(Id. at 278).
See also, Newton v. State, 229 Miss. 267, 90 So.2d 375 (1956); Nelms v. State, 58 Miss. 362 (1880); McNair v. State, 215 Miss. 510, 61 So.2d 338 (1952). McBroom v. State, 217 Miss. 338, 64 So.2d 144 (1953); Gandy v. State, 355 So.2d 1096 (Miss. 1978). The defendant is entitled to have an instruction on his theory of the case. De Silva v. State, 91 Miss. 776, 45 So. 611 (1908).
This case presents a unique problem. Rule 5.03 limits each party in a lawsuit to "submission" of no more than six instructions on the substantive law. Although the rule does not state whether submission means submit "to the judge" or submit "to the jury," it is clear from this record that the attorneys and trial judge construed the rule to mean submit "to the judge." Six defense instructions were submitted to the judge here, and two were granted and read to the jury. This interpretation fulfills the purpose of the rule to streamline instruction procedure and for economy of time and effort of participating court personnel  juror, attorney, and judge.
However, the obvious problem has arisen here. The attorney did not include among his six submitted instructions to the court the one important request covering his sole defense. The court was asked to grant the seventh instruction. Upon objection by the State, the instruction was refused on the basis that it exceeded the six instruction limit. It does not appear that the subject *211 matter of the instruction was considered by the judge.[3]
Rule 5.03 provides further that "... for good cause shown, ..." additional instructions may be granted. This language within the rule provides the mechanism to avoid this problem. Additionally, the trial judge may initiate and give appropriate written instructions. Newell v. State, 308 So.2d 71 (Miss. 1975).
In practical application of the rule, the parties are required to pre-file their instructions. At the conclusion of the testimony, the judge asks each counsel for their respective "six" substantive instructions to be selected from the pre-filed group for the court's consideration. The court then grants or refuses the initial six requests.
We, therefore, are of the opinion that "submit" within Rule 5.03 can be construed to mean "submit to the judge"; however, this construction must comply with due process of law and constitutional mandates. Otherwise, the jury could be left uninstructed.
This interpretation suggests that the matter lies within the sound judicial discretion of the trial judge who may limit or expand "for good cause shown," the number of instructions to be submitted to the court and to the jury depending upon the complexity of the suit. The submission of six instructions to the court has served a good purpose to avoid a proliferation of instructions. We see no reason why it should not be continued as a numerical beginning point for submission of instructions to the court so long as it does not become an inflexible rule thereby exceeding the sound judicial discretion of the trial court. We admonish trial counsel to submit among his six requested instructions one which presents his theory of the case as supported by the evidence.
In the case sub judice, the jury was left uninstructed on the defendant's alibi defense, and this error requires reversal.

IV.
Since this case will be remanded for a new trial, the Court addresses another assignment of error regarding the victim's testimony as to out of court statements made to third persons concerning the victim's identification of the defendant.
During the testimony of the chief prosecution witness Wendell Luther, Luther testified that he had told three other persons of his identification of the defendant as the one who assaulted his daughter. The first such remark was one week after the incident when Wendell Luther told his brother, Ladell Luther. The delay was attributed to his fear for his family. A friend, Raymond Patterson, was also told. The sheriff, Jim Hubbard, was not told until ten days to two weeks after the incident since the victim did not have confidence in him.
On the other hand, the first person to come to Luther's aid after the shooting was Bruce Westmoreland who testified that Luther did not identify Young as the perpetrator on the night of the shooting. Luther's daughter, Patsy, did not recognize Young even though she had worked as a babysitter for the Youngs in past years. Defense witness, William who had conversed with Luther one week after the crime, stated that Luther did not identify Young as the assailant at that time.
Troy Harrison, a co-indictee, testified for the state and admitted his participation with the defendant.
A motion to suppress hearing was held to consider the testimony relating to identification of the defendant. The judge overruled the suppression motion, stating that it was not a mistaken identification of the defendant by Luther, but went to Luther's credibility. At trial this hearsay testimony was admitted.
The defense asserts now that Wendell Luther's testimony that he had told other persons out of court of his assault was improper as hearsay and self-serving. The *212 defense asserts that this testimony seems to bolster Luther's statement. We agree.
In Phillips v. State, 177 Miss. 370, 171 So. 24 (1936), the state was permitted to show that shortly after the crime occurred, the witness/victim had told someone else that he had been robbed. This Court held:
It was error to permit the State to bolster the testimony of its witness by showing that he had stated to others out of court, that he had been robbed on the occasion in question (Cases omitted) (Id. 177 Miss. at 374, 171 So. at 26).
In Moore v. State, 102 Miss. 148, 59 So. 3 (1912), an eyewitness to an assault told her sister immediately after the flight of the perpetrator that she recognized the person as Berry Moore, the defendant. The facts of Moore and those of the case sub judice are similar in that Luther told his brother after this incident that his assailant was Young. He also told Raymond Patterson and Sheriff Hubbard that Young was the person who shot him. The Court in Moore stated clearly that such testimony was hearsay and that it was error to admit it into evidence. The Moore case was reversed and remanded for a new trial.
Also, in Ellis v. State, 254 So.2d 902 (Miss. 1971), this Court reversed a forgery conviction because the state bolstered the testimony of one of its witnesses and stated that it was error to bolster the testimony of its principal witness by hearsay testimony.
Years before, this Court had condemned such practice in Harrison v. Gatewood, 211 Miss. 121, 51 So.2d 59 (1951), holding that:
In a long line of cases this Court has held that a witness cannot be bolstered and corroborated by proving that on other occasions he has made statements out of court conforming to his testimony given in court and that the admission of such testimony in a close case is always reversible error.
(Id. 51 So.2d at 61).
Even in rape cases where out of court statements are admissible as a recognized exception to the hearsay rule,
Evidence of the prosecutrix's complaint must be confined to the bare fact that a complaint was made and details or particulars of the complaint are not admissible as substantive testimony to bolster the testimony of the prosecutrix as to the guilt of the accused.
See Carr v. State, 208 So.2d 886, 888 (Miss. 1968).
On petition for rehearing the state argues that Fells v. State, 345 So.2d 618 (Miss. 1977) is authority for the admission of these statements. We reaffirm our holding in Fells, but decide that it is factually distinguishable from the case sub judice and not applicable.
In Fells, the objectionable testimony was from the victim of the crime who, in addition to giving testimony of her identification of Fells based upon personal confrontation at the crime, testified concerning statements she made and procedures followed in an out-of-court lineup identification of Fells. Objection was that testimony about the out-of-court lineup identification was self-serving and bolstering to the state's case. After analyzing factors necessary to introduce identification testimony and constitutional standards announced by the United States Supreme Court, we held the testimony admissible. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
In the case sub judice, however, the objectionable testimony does not involve identification statements made based upon personal confrontation or police lineup. Instead, the testimony involves statements made by a victim, Luther, to third persons that Young was his assailant. We do not suggest that Luther cannot, himself, identify Young as his assailant based upon personal confrontation, provided the identification meets guidelines of accuracy and trustworthiness. We do hold that Luther cannot testify that he told others that he identified Young. If he does, he merely bolsters his permissible identification with hearsay and that is improper. Phillips v. State, supra; Moore v. State, supra. This *213 analysis distinguishes the rule announced in Fells, supra.
Appellant submits that his due process right to a fair trial was violated when the trial court permitted the state to use Mr. Luther's self-serving out of court statements to bolster his sworn testimony at trial. We agree in this assertion. Since the case is reversed and remanded for a new trial, we direct that the victim's hearsay testimony of out of court statements cannot be used to bolster and corroborate his in-court testimony.
REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] After defense counsel filed a petition for writ of certiorari, the record was filed in this Court April 5, 1983.
[2] Adopted August 15, 1979. (370-374 So.2d at p. XXXVI).
[3] No objection was raised to the substantive wording of this instruction and we do not address whether the language "any reason to believe" is sufficient.