# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01063-COA

**TERRENCE SHANNON A/K/A TODD SHANNON**  **APPELLANT**
**A/K/A TERENCE SHANNON A/K/A TERRANCE**
**SHANNON**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2017 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SILAS E. MURRAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1. Terrence Shannon challenges his conviction of first-degree murder with a firearm enhancement and of possession of a firearm by a felon. The Tunica County Circuit Court sentenced him to life imprisonment for first-degree murder and to ten years in the custody of the Mississippi Department of Corrections (MDOC) for possession of a firearm by a felon. His sentences are to run concurrently. The court did not sentence him for a firearm enhancement.

¶2. Shannon moved for a judgment notwithstanding the verdict (JNOV) or, in the

alternative, a new trial. The Tunica County Circuit Court denied his motion. Shannon now appeals.

¶3. He argues that: (1) the circuit court did not properly conduct voir dire; and (2) the circuit court erred when it allowed Roman to testify. We affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶4. Terrence Shannon drank beer outside his house with Ricardo Roman and James McKinley. He was rolling cigarettes when Sam Isabell rode by on a bicycle. Shannon confronted Isabell, and accused him of taking his rolling papers. Isabell denied the accusation. Shannon went inside of his house and returned with a gun. Shannon then shot Isabell in the head.

¶5. The jury found Shannon guilty of first-degree murder with a firearm enhancement and of possession of a firearm by a felon. The Tunica County Circuit Court sentenced Shannon to life imprisonment for first-degree murder and to ten years in the custody of the MDOC for possession of a firearm by a felon. His sentences are to run concurrently. The court did not sentence him for a firearm enhancement.

¶6. Shannon moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The court denied his motion, and he appeals to this Court. He argues that: (1) the circuit court did not properly conduct voir dire; and (2) the circuit court erred when it allowed Roman to testify. We affirm the Tunica County Circuit Court's judgment.

## DISCUSSION

I.     **Did the circuit court properly conduct voir dire?**

2

¶7. "The standard of review in examining the conduct of voir dire is abuse of discretion." *Jackson v. State*, 791 So. 2d 830, 835 (¶21) (Miss. 2001) (citing *Berry v. State*, 575 So. 2d 1, 9 (Miss. 1990)). "Abuse of discretion will only be found where a defendant shows clear prejudice resulting from undue lack of constraint on the prosecution or undue constraint of the defense." *Id.* (citing *Davis v. State*, 684 So. 2d 643, 652 (Miss. 1996)).

¶8. Shannon alleges that the circuit court did not properly conduct voir dire. He reasons that because of that failure, he was disadvantaged and the jury was biased in favor of the State.

¶9. However, we note that "[t]he failure to interpose an objection at trial waives the issue for appellate review." *Morales v. State*, 990 So. 2d 273, 277 (¶14) (Miss. Ct. App. 2008) (citing *Goodin v. State*, 787 So. 2d 639, 646 (¶20) (Miss. 2001)). "Our supreme court has continuously held that a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." *Carr v. State*, 190 So. 3d 1, 7 (¶26) (Miss. Ct. App. 2015) (internal quotation marks omitted) (quoting *Thorson v. State*, 895 So. 2d 85, 118 (¶81) (Miss. 2004)).

¶10. Shannon failed to object to the jury's composition during voir dire. He therefore is procedurally barred from asserting that the circuit court erred. Instead, any review must be conducted under the plain-error doctrine: "The plain error doctrine has a two-part test which requires: (i) an error at the trial level and (ii) such an error resulted in a manifest miscarriage of justice." *Stephens v. State*, 911 So. 2d 424, 432 (¶19) (Miss. 2005).

¶11. First, this Court must look to whether there was error. We have acknowledged the

following:

> In general, voir dire is presumed sufficient to ensure a fair and impartial jury. To overcome the presumption, a party must present evidence indicating that the jury was not fair and was partial and must show that that prejudice resulted from the circuit court's handling of voir dire. Voir dire is conducted under the supervision of the court, and a great deal must, of necessity, be left to the court's sound discretion.

*Mack v. State*, 237 So. 3d 778, 785 (¶19) (Miss. Ct. App. 2017) (quoting *Keller v. State*, 138 So. 3d 817, 843 (¶47) (Miss. 2014)). Furthermore, "[t]he linchpin is whether the venire members stated that they could be fair and impartial jurors if chosen." *Hughes v. State*, 983 So. 2d 270, 284 (¶63) (Miss. 2008).

¶12.     Shannon claims error regarding Jurors 7, 9, 20, and 46. Juror 7 remained in the jury pool because even though he knew an assistant district attorney (ADA), that ADA was never present at the trial. Juror 9 was struck on the State's request when it was discovered that she knew Shannon and his family and her brother had been a victim of violent crime. Juror 20 was struck because he indicated that he knew Shannon and it would be difficult for him to be "fair and impartial."

¶13.     As to Juror 46, the circuit court did not ask Juror 46 specifically if she could be "fair and impartial." But the following exchange did occur:

> Q.     [Juror 46], are you friends with the defendant, members of his family or both?
>
> A.     Both.
>
> Q.     Both.
>         Same question. If you're selected—if you were to be selected on this jury, the fact—and he's on trial here today—the fact that you're friends with the defendant and members of his family, would that enter into

4

your thinking if you were trying to deliberate in this case?

A.     Yes, it would.

Q.     All right. Thank you, ma'am. You need not answer any further questions from me or the lawyers.

¶14.   Shannon must show that any error "resulted in a manifest miscarriage of justice." Given the facts of his case and all the evidence presented at trial—including testimony from several police officers that Shannon, McKinley, and Roman were all at the scene when they arrived and testimony from McKinley that he saw Shannon shoot Isabell—we do not find that there was a manifest miscarriage of justice. Therefore, this Court affirms the circuit court's judgment.

## II.     Did the circuit court err when it allowed Roman to testify?

¶15.   "The standard of review regarding admission or exclusion of evidence is abuse of discretion. We will not reverse the trial court's evidentiary ruling unless the error adversely affects a substantial right of a party." *Jenkins v. State*, 253 So. 3d 349 (¶19) (Miss. Ct. App. 2018) (quoting *Mingo v. State*, 944 So. 2d 18, 28 (¶27) (Miss. 2006)).

¶16.   Shannon argues that because Roman was unable to identify Shannon as present in the courtroom, the circuit court erred in allowing Roman to testify. Furthermore, Shannon asserts that because the State asked Roman to identify Shannon by a "street name"—Todd, rather than Terrence—the identification was unreliable.

¶17.   "In order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." *Carr v. State*, 873 So. 2d 991, 1004 (¶35) (Miss. 2004). Therefore, Shannon must rely on the plain-error doctrine's two-part test that "(i) an error at the trial level

5

and (ii) such an error resulted in a manifest miscarriage of justice." *Stephens*, 911 So. 2d at 432 (¶19).

¶18. When Roman began his testimony, he was asked if Terrence Shannon was present in the courtroom:

> A. I don't see him, no, because my vision is real bad.
>
> Q. Okay.
>
> A. I'm blind in one eye, and I'm blurry in the other eye.
>
> Q. If you're standing up close to an individual, can you see him?
>
> A. Yes. About as far as from here to where you are, yes, sir.

¶19. Later during direct examination, Roman said the following after describing the shooting:

> Q. Let me ask you this now. You told us earlier that your eyes are not—that you're blind in one eye now—
>
> A. Yes.
>
> Q. —right?
>
> A. Yes.
>
> Q. Back about two years ago or so, were your eyes good then?
>
> A. They was better. They was in better—better—way better than what they is now.
>
> Q. So were you able to see clearly what took place—
>
> A. Yes.
>
> Q. —at that time?

A.     Yes, because I'm blind on my right eye and then blurry in my left eye.

¶20.   The circuit court did not commit any error in allowing Roman to testify. Shannon's assertion that his case is analogous to *Ervin v. State*, 136 So. 3d 1053 (Miss. 2014), is incorrect. In *Ervin*, the defendant's identification was at issue, and our supreme court reversed and remanded the case because of flawed identification. Here, there is no dispute as to whether Shannon was the individual who shot Isabell. Several police officers testified that Shannon, McKinley, and Roman were all at the scene when they arrived and McKinley testified that he saw Shannon shoot Isabell. As the visually-impaired Roman testified to what he observed when the incident occurred when his eyesight was better, such being subject to cross-examination, the court's allowance of that testimony did not constitute error. Therefore, this Court affirms the circuit court's judgment.

## CONCLUSION

¶21.   We find that the circuit court properly conducted voir dire and that the circuit court did not err when it allowed Roman to testify. Thus, we affirm the circuit court's judgment.

¶22.   **AFFIRMED.**

**GRIFFIS, C.J., BARNES AND CARLTON, P.JJ., WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.  McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**